UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 19-20735-CIV-MORENO

JONES SUPERYACHT MIAMI, INC.,

       Plaintiff,

vs.

M/Y WAKU, her engines, tackle and other
appurtenances in Rem, an aluminum hull of
36.77 meters, Cayman Island Official Number
741370,

       Defendant.
_____/

# OMNIBUS ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO EXCLUDE

THIS CAUSE came before the Court upon Plaintiff's Motion for Partial Summary Judgment on Third Affirmative Defense (**D.E. 42**), filed on **February 7, 2020**. THE COURT has considered the motion, the response in opposition, the reply, oral argument presented by counsel during the March 11, 2020 status hearing, and the pertinent portions of the record. It is **ADJUDGED** that for the reasons below, the motion for partial summary judgment is **DENIED**.

In addition, Defendant filed a Motion to Exclude Expert Opinion of James McCrory (**D.E. 50**) on **February 28, 2020**. After reviewing the motion, response, reply, and expert report, it is **ADJUDGED** that, also for the reasons below, the motion is **DENIED**.

## I. BACKGROUND

This case arising in admiralty concerns a boatyard, Jones Superyacht Miami, Inc., suing to enforce a maritime lien on the M/Y Waku, an "aluminum hulled vessel of 36.77 meters" owned

by FRS Affair Limited.[1] In its second amended complaint, Plaintiff states that due to providing various necessaries, "such as dockage, electricity, monitoring, maintenance, and . . . a member of the M/V Waku crew to routinely inspect" the yacht since September 5, 2017 (the date the original Dockage Agreement was signed), it is currently owed more than $1,079,027.22.

Defendant,[2] in its answer and affirmative defenses, alleges that almost all of the amounts sought by the Plaintiff are "illegitimate, unreasonable, and excessive." Specifically, in its third affirmative defense, Defendant states that Plaintiff "has violated Florida's Deceptive and Unfair Trade Practices Act ["FDUTPA"] through its charging practices." Defendant does not provide any more detail to those practices in its third affirmative defense. However, subsequent filings in this case make clear that Defendant takes issue with "Environmental Impact Fees."[3] Defendant contends that these fees were deceptive since the monies recovered from them were kept for general expenses, and not specifically earmarked to cover certain environmental costs.

Now pending before the Court is Plaintiff's motion for partial summary judgment, seeking to strike the FDUTPA affirmative defense. Also pending is Defendant's motion to exclude certain expert testimony. Below, the Court addresses and denies both motions.

---

[1] Plaintiff originally signed a Dockage Agreement on September 5, 2017 with EPBC Holdings Limited, the previous owner of the M/Y Waku. Around two years later, on September 4, 2019, FRS Affair Limited bought the vessel at a United States Marshal's Sale. Plaintiff now seeks to collect on its maritime lien pursuant to 46 U.S.C. § 31342 (titled "Establishing maritime liens"), asking that its lien be deemed a "preferred" one, and that the M/Y Waku "be condemned or sold to satisfy said lien with interests and costs." Since this case concerns the validity of a maritime lien, the Court has jurisdiction. *See Am. Dredging Co. v. Miller*, 510 U.S. 443, 446-47 (1994) ("An *in rem* suit against a vessel is . . . distinctly an admiralty proceeding, and is hence within the exclusive province of the federal courts."); *accord Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010).

[2] For purposes of this Order, FRS Affair Limited, which owns the M/Y Waku, and the M/Y Waku yacht itself (the named Defendant), are used interchangeably.

[3] According to an expert report prepared by James McCrory (later analyzed later in this Order), a total of $26,404.36 was charged by Defendant as Environmental Impact Fees.

## II. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Summary Judgment Standard

"Summary judgment pursuant to [Federal Rule of Civil Procedure] 56[a] is appropriate when there exists no genuine issue as to any material fact and a decision may be rendered as a matter of law." *Howard v. BP Oil Co.*, 32 F.3d 520, 524 (11th Cir. 1994). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In assessing whether the moving party has met this burden, the Court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); *see also* FED. R. CIV. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). But if the record, taken as a whole, cannot lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B. Analysis**

Discovery having recently concluded on February 7, 2020, Plaintiff moves for partial summary judgment as to the third affirmative defense based on FDUTPA. Plaintiff makes two arguments: (1) that the defense should be rejected as a matter of law since case law in this circuit plainly holds that maritime law wholly preempts application of FDUTPA, and (2) regardless, even if FDUTPA were to apply, because Plaintiff fully disclosed the Environmental Impact Fees in the Dockage Agreement, Rate Sheet, and Waku Invoices, there was no deception as a matter of law. Defendant rebukes both points, arguing that case law actually supports the opposite conclusion regarding preemption of FDUTPA claims, and that there remains a genuine issue of material fact concerning whether the challenged environmental fees are deceptive in nature.

*1. Plaintiff's Reliance on* Misener *and Its Progeny Is Misplaced*

In making its first argument, that Defendant cannot assert a FDUTPA affirmative defense in a maritime case, Plaintiff primarily relies on *Misener Marine Construction, Inc. v. Norfolk Dredging Co.*, 594 F.3d 832 (11th Cir. 2010). Plaintiff contends that that case stands for the sweeping proposition that general maritime law preempts any claim brought under any state statute providing for prevailing attorney's fees. Since it is well established by Eleventh Circuit precedent that federal maritime law strictly conforms to the American Rule of attorney's fees (where each party bears his or her own fees unless a federal statute or contract provides otherwise),[4] Plaintiff argues that FDUTPA, a state law which provides for attorney's fees,[5] is inconsistent with maritime

---

[4] *See Natco Ltd. P'ship v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1193 (11th Cir. 2001) ("The prevailing party in an admiralty case is not entitled to recover its attorney's fees as a matter of course."); *Coastal Fuels Mktg., Inc. v. Fla. Express Shipping Co.*, 207 F.3d 1247, 1250 (11th Cir. 2000) ("A party is not entitled to attorney's fees in an admiralty case unless fees are statutorily or contractually authorized.").

[5] *See* § 501.2105, Fla. Stat. (2020) ("In any civil litigation resulting from an act or practice involving a violation of this part . . . the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party.").

law.  Plaintiff points to certain language in *Misener* for its complete preemption argument, where the Eleventh Circuit seemed to hold, in broad strokes, that because "the [Georgia Prompt Pay Act's] entitlement to attorney's fees is in direct conflict with this principle of substantive maritime law . . . the GPPA cannot be incorporated into substantive maritime law." *Id.*

Plaintiff next argues that a trilogy of cases in this very district supports its broad reading of *Misener*.  The first, *Pantropic Power, Inc. v. M/V Jalapeno*, No. 15-14369, 2016 WL 7626209 (S.D. Fla. June 27, 2016), written by Magistrate Judge Lynch, and summarily affirmed and adopted by Judge Rosenberg, holds that because of *Misener*, the FDUTPA claim in that case was "preempted in full, both its attorney fee provision, specifically, and as a claim for relief, generally." *Id.* at *5.  Second, Plaintiff relies on *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342 (S.D. Fla. 2007), a case which more directly held that *Misener* fully preempts FDUTPA claims.  There, Magistrate Judge Hopkins noted how the plaintiff sought to recover actual damages (in addition to attorney's fees) arising from an alleged violation of FDUTPA.  *Id.* at 1347. However, the magistrate judge, in an opinion summarily affirmed and adopted by Judge Hurley, held unambiguously that, pursuant to *Misener*, "general federal maritime law preempts a claim for damages under the FDUTPA." *Id.* at 1352.  Plaintiff's third case, *GE Seaco Services, Ltd. v. Interline Connection, N.V.*, No. 09-23864, 2011 WL 98406 (S.D. Fla. Jan. 12, 2011), does not involve a FDUTPA claim.  But, Plaintiff highlights how Magistrate Judge O'Sullivan, in a case where the parties consented to his jurisdiction, relied on a broad reading of *Misener* to fully strike a claim brought under Florida's civil theft statute because that statute provided for fees. *Id.* at *5. The magistrate judge concluded that "[b]ecause the plaintiff's civil theft claim is preempted by federal maritime law, permitting the plaintiff to assert this claim would be futile." *Id.*

After careful review, the Court is not persuaded by Plaintiff's reading of *Misener*, nor the

5

cases relied on in seeking to strike the FDUTPA defense. A close reading of *Misener*, and its precise holding, makes this apparent. There, the specific issue on appeal was whether the plaintiff could recover attorney's fees under the GPPA in a case arising under admiralty law. *Misener*, 594 F.3d at 834. Judge Wilson, writing for the three-judge panel, explained: "This case concerns whether the prevailing party in a dispute arising from a dredging contract is entitled to collect attorney's fees." *Id.* Thus, the issue on appeal was limited solely to the issue of fees, not the entire validity of the GPPA. While Plaintiff does seem to point to broad language in *Misener*, language elsewhere in the opinion—its central holding—clarifies its true scope: "We hold that the consistent and continued application of the American Rule to maritime disputes has established the American Rule as a characteristic feature of substantive maritime law. . . . *Therefore, the GPPA's entitlement to attorney's fees is in direct conflict with this principle of substantive maritime law*." *Id.* at 841 (emphasis added). Based on this reasoning, the Eleventh Circuit would "affirm the order of the district court denying [the defendant] recovery of attorney's fees under the GPPA." *Id.* at 835. In short, the holding of *Misener* was narrow, striking down only that part of the GPPA on appeal providing for fees. And such a narrow reading makes sense—as no other section of the statute was on appeal, the appellate court could not, and did not, have an opportunity to hold that any other part of that act was inconsistent with principles of general maritime law.

In addition, the central reasoning of *Misener* supports the proposition that maritime law does not wholly preempt FDUTPA claims (or affirmative defenses). Notably, the court in *Misener* explained that state law claims may in fact apply in the maritime context, so long as "(1) there is not an act of Congress that speaks to the issue; (2) the state law does not contravene a characteristic feature of the general maritime law; and (3) the state law does not interfere with the proper harmony and uniformity of maritime law." *Misener*, 594 F.3d at 839 (citing *S. Pac. Co. v.*

6

*Jensen*, 244 U.S. 205, 216 (1917)). Since Congress had not acted on the issue of attorney's fees in the maritime context, the Eleventh Circuit in *Misener* was left to evaluate the second part of the preemption test: whether the prevailing fees provision of the GPPA contravened a characteristic feature of general admiralty law. *Id.* The court concluded the provision did, given the "consistent and continued application of the American Rule to maritime disputes." *Id.* at 841.

Similar to *Misener*, Congress has not spoken as to the application of FDUTPA in the maritime context, and so this Court must look to the second part of the preemption test. But Plaintiff, who seeks to strike down the FDUTPA defense, does not actually argue how the statute violates a characteristic feature of admiralty law. As Plaintiff is moving for summary judgment, it bears the burden of showing why the defense should be stricken. But it does not, precluding this Court's ability to engage in a formal preemption analysis. In *Brown v. Oceana Cruises, Inc.*, No. 17-22654, 2017 WL 10379580 (S.D. Fla. Nov. 20, 2017), a maritime case, Judge Altonaga decided to only preempt a portion of a state statute providing for fees, as opposed to the whole statute, since "no basis ha[d] been given for dismissing the substantive [state] claim [for misleading advertising]." *Id.* at *7. The "Defendant ha[d] not shown how Section 817.41(1) itself contravenes general maritime law." *Id.* The same reasoning applies here: as Plaintiff has failed to provide an articulable basis for dismissing the FDUTPA defense, it has failed to carry its burden for seeking complete preemption of the statute. *See also Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 701 (Fla. 3d DCA 2000) ("We are unable to see how the enforcement of state law against deceptive and unfair trade practices would work material prejudice to the characteristic features of the general maritime law, or interfere with its proper harmony and uniformity.").

Besides Plaintiff failing to meet its burden, the Court notes that an argument can be made that FDUTPA does directly advance a core aim of maritime law. As explained by the Supreme

7

Court of the United States, "the basic rationale for federal admiralty jurisdiction is the protection of maritime commerce through uniform rules of decision." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 544 (1995) (internal quotation marks and citation omitted). Since the stated purpose of FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce," it would seem that FDUTPA promotes a chief characteristic feature of maritime law. § 501.202(2), Fla. Stat. (2020). As Defendant observes, without application of FDUTPA, shipyards across Florida could employ whatever deceptive practices they wished when charging customers for their purported services.

Further, an argument can be made that FDUTPA advances uniformity in maritime law. Virtually every state, after all, has its own version of a statute providing for consumer protection, suggesting there is no reason why application of FDUTPA in the maritime context would be a unique feature reserved solely to the State of Florida. Buttressing the argument, FDUTPA also seeks "[t]o make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection." § 501.202(3), Fla. Stat. Frequently called the "little FTC Act," FDUTPA was designed to complement the Federal Trade Commission Act by enabling private state consumers to sue for deceptive or unfair business transactions. *Rogers v. Cisco Sys., Inc.*, 268 F. Supp. 2d 1305, 1315 (N.D. Fla. 2003); *see also Kuenzig v. Kraft Global Foods, Inc.*, No. 8:11-cv-838, 2012 WL 366927, at *2 (M.D. Fla. Feb. 3, 2012) (referencing a FDUTPA claim as a "Little Federal Trade Commission Acts claim"). Since the same conduct that constitutes a "deceptive act or practice" or an "unfair act or practice" under the Federal Trade Commission Act is a violation of FDUTPA, a colorful basis exists to find that application of FDUTPA in the maritime context promotes uniformity of maritime law. *See* § 501.203, Fla. Stat.

8

(basing a violation of FDUTPA on, among other things, "[t]he standards of unfairness and deception set forth and interpreted by the Federal Trade Commission").

Finally, while *Pantropic Power*, *F.W.F.*, and *GE Seaco Services* do seem to support the broad view that maritime law fully preempts FDUTPA, three other cases in this district support the narrow doctrine of selective preemption. In *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351 (S.D. Fla. 2009), Judge Ungaro declined to fully strike a FDUTPA claim, writing that "[w]hile the Court will reserve judgment on whether Plaintiff may seek attorneys' fees in this action, the Court does not see how FDUTPA's more substantive provisions conflict with maritime law." *Id.* at 1356. Given Plaintiff's similar failure to argue how the rest of the FDUTPA provisions violate a characteristic feature of maritime law, the same result holds true here.

In its reply, Plaintiff notes how *Fojtasek* was decided before *Misener*. While true, another case in this district, decided after *Misener*, holds similarly. *See Barnext Offshore Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-23869, 2011 WL 13223746, at *16 (S.D. Fla. May 16, 2011). In *Ferretti*, Judge Altonaga, while not citing *Misener*, held that maritime law only preempted FDUTPA's attorney's fee provision: "federal maritime law only preempts damages provisions of a statute where there is a conflict. . . . The FDUTPA allow[s] for the recovery of attorney's fees [and] provides for actual damages. Consequently, even if admiralty law controls, not all types of damage are preempted." *Id.* (citations omitted). In another case, also decided after *Misener*, Judge Altonaga applied the same reasoning to preempt a portion of a state statute that provided for attorney's fees. *Oceana Cruises*, 2017 WL 10379580, at *6. This time, Judge Altonaga did expressly cite *Misener*, and interpreted that case to mean that only attorney's fees provisions in state statutes are preempted by maritime law. *Id.* She then relied on *Fojtasek* in noting that "no basis has been given for dismissing the substantive Section 817.41(1) claim." *Id.*

*2. Having Found that the FDUTPA Affirmative Defense Is Not Preempted by Maritime Law, There Remains a Genuine Issue of Material Fact*

Plaintiff alternatively argues in its motion for partial summary judgment that, if the Court does entertain the FDUTPA affirmative defense, the defense fails. As a preliminary matter, a party asserting a FDUTPA claim must prove: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). The relevant Florida statute specifically outlaws "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. "A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that 'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Bookworld Trade, Inc. v. Daughters of St. Paul, Inc.*, 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (quoting *Rollins*, 951 So. 2d at 869).

Plaintiff argues that by disclosing the Environmental Impact Fees in the Dockage Agreement, Rate Sheet, and Waku Invoices, it could not have deceived Defendant "as a matter of law." The name of the fee "implie[s] that the company will keep this fee for its costs." Further, Plaintiff explains that it does have real clean-up costs for which the fees are used, such as anytime a vessel discharges oil into the water or anytime it pays "additional insurance premium costs related to its effect on the environment, including its general liability policy that includes accidental discharge coverage and costs for additional pollution policy."

In rebuttal, Defendant argues that the issue of deception is a genuine issue of material fact. It points to *Waste Pro USA v. Vision Construction ENT, Inc.*, 282 So. 3d 911 (Fla. 1st DCA 2019), a case where a state appellate court upheld the trial court's certification of a class action based on the defendant's charged "environmental fee" being potentially deceptive. *Id.* at 921-22. As evidence in this case that the environmental fee was in fact deceptive, Defendant points to witness

10

testimony. First, it points to the testimony of Frank Sarria, the president of FRS Affair Limited who purchased the M/Y Waku. Sarria testified that he thought the fee was used to pay taxes to a state environmental agency. Defendant next points to the testimony of Jose Bared, Plaintiff's corporate representative. Bared admitted that the environmental fees were not deposited into a separate banking account used to pay for environmental expenses.[6] Due to this, Defendant concludes that the fees are a pretext for Plaintiff to extract more money from its customers.

Ultimately, after considering the evidence, there remains a genuine issue of material fact regarding whether the Environmental Impact Fees were deceptive or not. Defendant's arguments are on point. Notably, this case is like *Waste Pro* in that a fact finder could determine that the challenged fee is likely deceptive. An argument can be made that when analyzing the term "Environmental Impact Fees," "a reasonable consumer would likely conclude such a fee was used by [Plaintiff] to pay for costs associated with environmental compliance regulations"—not that Plaintiff would keep the fee in a general operating account and use it to possibly pay for other expenses. *Waste Pro*, 282 So. 3d at 916. Furthermore, the fee appears to customers as a percentage of their total invoice (2.5%), thus appearing like a set governmental tax. While somewhat self-serving, Sarria, the President of FRS Affair Limited who purchased the M/Y Waku, testified that he believed the fee was a tax due to its name and appearance.

Plaintiff's main argument that there was no deception "as a matter of law" since it disclosed the fee fails. Just because there was disclosure does not mean that the fee would still not likely deceive a reasonable customer. Plaintiff attempts to rely on two cases to support its disclosure argument: *Vorst v. TBC Retail Group, Inc.*, No. 12-cv-80013, 2012 WL 13026643 (S.D. Fla. Apr.

---

[6] During deposition, Bared directly admitted that Plaintiff does not deposit the Environmental Impact Fees into a segregated account, and does not pay any environmental costs from a segregated account. Defendant thus argues that because of this, "Jones no more uses the Environmental Impact Fee to cover environmental 'impacts' than it uses the other fees that it collects from its customers to do so."

11

12, 2012), and *Berry v. Budget Rent a Car Systems, Inc.*, 497 F. Supp. 2d 1361 (S.D. Fla. 2007). However, in both these cases, disclosure of the fees precluded the FDUTPA claims because the titles of the fees themselves were not deceptive. *See Vorst*, 2012 WL 13026643 at *2 (the title "oil-disposal fee" implies that the company will "keep the fee for itself"); *Berry*, 497 F. Supp. 2d at 1367 (the title "cost-recovery fee" implies that the company will keep the money collected as a "recovery for costs"). Conversely, the Environmental Impact Fees do not readily imply, by their title, that Plaintiff would keep the fee. Instead, a fact finder could determine that "the fee gives customers the false net impression that [Plaintiff] is taking the fee and passing it through to a governmental entity to cover a fee or tax." Or, a fact-finder could even find that the fee is not being used to cover environmental costs, at all. Thus, as *Waste Pro* held, the issue concerning deception is not whether Plaintiff "has environmental costs; the issue is whether the 'environmental fee' is tied to these costs." *Waste Pro*, 282 So. 3d at 922.

### III. DEFENDANT'S MOTION TO EXCLUDE EXPERT OPINION

#### A. James McCrory's Expert Report

At trial, Plaintiff will attempt to rely on James McCrory's expert opinion to satisfy the second element for establishing a maritime lien: that Plaintiff charged a reasonable price for the necessaries provided to the M/Y Waku. *See Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005) (To establish a maritime lien, "a plaintiff must prove: (1) it provided 'necessaries' (2) at a reasonable price (3) to the vessel (4) at the direction of the vessel's owner or agent."). James McCrory, an "Independent Marine Surveyor" according to his resume, prepared an expert report titled "Invoice Review." In it, he states that he reviewed various documents, including the Dockage Agreement and "24 invoices issued to the Motor Yacht 'WAKU'" from September 2017 to September 2019. He writes that "[t]his review is limited to the charges shown

12

on the 24 invoices provided," and lists a summary of those charges in a table. Afterwards, he describes each charge in detail and ties those charges whenever he can to the documents he reviewed, and concludes whether each charge (for services like "captain maintenance," "check up and maintenance," "environmental fee," etc.) is reasonable. At the end of the report, McCrory attaches four spreadsheets that contain his detailed calculations of the charges.

Defendant now files a motion to exclude McCrory's expert report for being "the embodiment of *ipse dixit*." Defendant explains how the report is a mere six pages and is "almost entirely devoid of reasoning." "[I]t mostly amounts to a book report-like recapping of Jones's various charges followed by Mr. McCrory's conclusory opinion that those charges are 'reasonable.'" Defendant argues that because of its various deficiencies, the report fails to comply with Federal Rule of Civil Procedure 26(a)(2)(B) and Federal Rule of Evidence 702.

In rebuttal, Plaintiff argues that the expert report does not need to rely on scientific methods, as it is a damages report. First, though, Plaintiff asks that the Court strike the motion to exclude because Defendant failed to meet and confer before filing it. Second, Plaintiff contends that McCrory does provide "basis and reasons" for finding the fees reasonable: he states how he reviewed all the invoices issued to the M/Y Waku. Third, Plaintiff urges the Court to defer ruling on the admissibility of McCrory and his report until trial. It argues that there is no need for an advance ruling on its expert report since the case will proceed to a bench trial. Fourth and finally, if the Court is inclined to rule, Plaintiff argues that McCrory is qualified as an expert. As this is a damages case, standards of scientific reliability are not in play. Instead, he is qualified as an expert "based on years of personal experience as a marine surveyor."

## B. Despite the Expert Report's Apparent Deficiencies, It Is Admissible

After review, it appears that Defendant's concerns with the expert report seem initially valid. The report really is like a mere recap of Plaintiff's charges, with no real basis provided for McCrory's conclusion that the charges were reasonable. While McCrory does not appear to violate Rule 26(a)(2)(B) since he details the background data and documents he reviewed in forming his opinions, there is doubt that the report complies with Rule 702. That rule may serve to compel striking the report on three bases: McCrory is not qualified, his testimony is not reliable, and his testimony is not helpful. On qualification, McCrory's experience seems to be evaluating damage to boats as a marine surveyor—not evaluating fees normally charged for storage and dockage. On reliability, his conclusory opinions make it difficult to determine whether they are the product of any reliable methodology (or even personal experience). Finally, on helpfulness, it is precisely because of the conclusory nature of the report that it does not appear helpful.

However, the Court need not be so strict in assessing the admissibility of McCrory and his expert report. After all, Defendant's own expert report on fees, prepared by G. Robert Toney, suffers from many of the same deficiencies as McCrory's report. And, Plaintiff's failure to satisfy the meet and confer requirement is immaterial where, as here, the central dispute among the parties is the reasonableness of the fees charged. But, most important of all, there is no need for the Court to deny the admissibility of an expert report where the Court is acting as fact-finder. In a bench trial, "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005). As this is a bench trial, "[t]he Court is confident that it can discern testimony that seeks to make legal conclusions from testimony that provides the Court with background, context and industry knowledge that are traditionally supplied by experts. . . . Testimony that offers legal conclusions

will be afforded no weight." *Apple Glen Inv'rs, L.P. v. Express Scripts, Inc.*, No. 8:14-cv-1527, 2015 WL 3721100, at *4 (M.D. Fla. June 15, 2015) (internal quotation marks and citation omitted).

Thus, although the Court has its reservations about the McCrory report, and even the Toney report, best practices dictate allowing the testimony to be heard and later discrediting any part found unpersuasive. In sum, the Court "is free to later decide to disregard testimony in whole or in part and/or to decide how much weight to give it." *GLF Constr. Corp. v. Fedcon Joint Venture*, No. 8:17-cv-1932, 2019 WL 7423552, at *3 (M.D. Fla. Oct. 15, 2019).

## IV. CONCLUSION

Based on the foregoing reasons, Plaintiff's motion for partial summary judgment is **DENIED**. Plaintiff misreads the breadth of *Misener* and fails to explain how, exactly, FDUTPA contravenes a characteristic feature of maritime law. The Court instead finds Judge Altonaga's approach in *Ferretti* and *Oceana Cruises* (both decided after *Misener*) persuasive, holding that only provisions of state statutes providing for prevailing fees are preempted by maritime law. As the Court finds that a genuine issue of material fact remains concerning the deceptive nature of the Environmental Impact Fees, the case proceeds to a bench trial. Whether the challenged conduct "constitutes an unfair or deceptive trade practice is a question of fact for the jury [or judge] to determine." *Nature's Prods., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1322 (S.D. Fla. 2013).

As for Defendant's motion to exclude McCrory's expert opinion, it too is **DENIED**. While the expert report presently appears to be *ipse dixit*, the Court will allow McCrory to testify and will then determine whether to disregard any portion thereof unsupported by knowledge.

DONE AND ORDERED in Chambers at Miami, Florida, this 3rd of April 2020.

*Federico A. Moreno*

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

15

Copies furnished to:

Counsel of Record